# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RICHARD D. POWELL, )
)
    Plaintiff, )
)
  v. )
) No. 10 C 6813
XO SERVICES, INC., a Delaware )
corporation, and SCOTT GENTLES, )
)
    Defendants. )
)

## MEMORANDUM OPINION AND ORDER

The operative complaint in this case asserts two state-law claims for *per se* defamation against defendants XO Services, Inc. ("XO") and Scott Gentles and for tortious interference with prospective economic advantage against Gentles.[1] The basic background facts have been described in my April 1, 2011, opinion in this case and will not be repeated here. Defendants have each moved separately for summary judgment on all claims, and for the following reasons, defendants' motions are granted.

After David Nash and Trent Edwards were dismissed from this case, *see Powell v. XO Services, Inc.*, 781 F. Supp. 2d 706 (N.D. Ill. 2011), plaintiff has proceeded under the theory that Gentles verbally published certain annotations he made to the Nash-Edwards Report during a January 7, 2010, meeting with XO management to

---

[1] The operative complaint also includes a claim for breach of contract against XO, but this claims was previously dismissed.

discuss the report and discipline for plaintiff and Tom Schreck, another XO employee. After the meeting, plaintiff was terminated. Gentles' annotations consist of a series of statements, some of them defamatory and some of them not, that were handwritten in the margins of the Nash-Edwards Report and at the end of the report. As I held in my April 1, 2011, opinion, while many of Gentles' handwritten statements are susceptible to innocent construction, those that accuse Powell of engaging in a pattern of lying and of authorizing false documents are actionable. *See Powell*, 781 F. Supp. 2d at 713-14. Consistent with my February 7, 2012, statement in this case, plaintiff's amended complaint alleged additional contextual and publication facts but did not allege any new defamatory statements beyond Gentles' handwritten statements.

To succeed on his defamation claim, plaintiff must show that Gentles "made a false statement concerning plaintiff, that there was an unprivileged publication of the defamatory statement to a third party by [Gentles] and that plaintiff was damaged." *Wynne v. Loyola Univ. of Chicago*, 741 N.E.2d 669, 675 (Ill. App. Ct. 2000) (citing *Cianci v. Pettibone Corp.*, 698 N.E.2d 674, 679 (Ill. App. Ct. 1998)). A defendant has the burden of establishing that a qualified privilege exists by showing that the occasion for the communication "created some recognized duty or interest to make the communication so as to make it privileged." *Kuwik v. Starmark Star Mktg. and Admin., Inc.*, 619 N.E.2d 129, 134 (Ill. 1993) (citing

Restatement (Second) of Torts §§ 593 through 599 (1977)). There are three conditionally privileged occasions: "(1) situations in which some interest of the person who publishes the defamatory matter is involved[;] (2) situations in which some interest of the person to whom the matter is published or of some other third person is involved[;] (3) situations in which a recognized interest of the public is involved." *Kuwik*, 619 N.E.2d at 135 (quoting S. Harper, F. James & O. Gray, The Law of Torts § 5.25, at 216 (2d ed. 1986)).

"However, once a defendant establishes a qualified privilege, a plaintiff must prove that the defendant either intentionally published the material while knowing the matter was false, or displayed a reckless disregard as to the matter's falseness." *Kuwik*, 619 N.E.2d at 133 (citing *Mittelman v. Witous*, 552 N.E.2d 973, 981 (Ill. 1989)). "Thus, an abuse of a qualified privilege may consist of any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties." *Kuwik*, 619 N.E.2d at 136. Whether a qualified privilege exists is a question of law for the court, but the issue of whether the privilege was abused is a question of fact for the jury. *Kuwick*, 619 N.E.2d at 133; *see also Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 536 (7th Cir. 2009).

Gentles allegedly published the defamatory statements during a meeting with upper management on January 7, 2010, and the question is whether Gentles' statements during that meeting are privileged. The meeting took place after David Nash, Director of XO's Human Resources Department, and Trent Edwards, XO's Director of Operations for the Central Region, issued their report following an investigation into the whereabouts of XO equipment. The report advocated for Schreck's termination and Powell's reprimand. It is undisputed that Powell reported to Edwards and Schreck was an XO employee under Gentles' supervisory authority.

Plaintiff's memorandum in opposition to Gentles' motion for summary judgment does not directly address the issue of whether defendants have established the existence of a qualified privilege. In fact, plaintiff asserts, incorrectly and without support, that whether Gentles had an "interest" in Powell's actions is a question of fact for the jury. (Pl.'s Resp., at 3). Plaintiff seems to be arguing that Gentles had no interests at stake because he had not authority to fire Powell. But by focusing on Gentles' working relationship with Powell within the XO hierarchy, plaintiff misses the thrust of the existing law, which is focused on the *occasion* for the communication. *Kuwik*, 619 N.E.2d at 134 ("Under the Restatement (Second) of Torts [adopted by the Illinois Supreme Court], a court looks only to the occasion itself for the communication and determines as a matter of law and general policy

4

whether the occasion created some recognized duty or interest to make the communication so as to make it privileged."). The point plaintiff raises goes more properly to whether the privilege was abused, not whether it existed in the first instance.

Courts have regularly held that statements made by employees during workplace investigations are covered by the qualified privilege. *See Katial v. Mass. Mut. Life Ins. Co.*, 2002 WL 1632556, at *10 (N.D. Ill. July 22, 2002); *Naeemullah v. Citicorp Services, Inc.*, 78 F.Supp.2d 783, 792-93 (N.D. Ill. 1999); *Vickers v. Abbott Laboratories*, 719 N.E.2d 1101, 1108-1110 (Ill. App. Ct. 1999). This approach gives effect to policy reasons for the privilege, namely "facilitating a free flow of information so that correct information may ultimately be attained." *Vickers*, 719 N.E.2d at 1108 (citing *Kuwik*, 619 N.E.2d at 133). Though the Nash-Edwards Report had already been distributed to XO management and Powell had received a reprimand, Schreck had not yet been terminated when Gentles allegedly published his defamatory statements. Any such statements, then, were made in an investigatory context.

Here, the first two occasions described in *Kuwik* apply to establish a qualified privilege. The Nash-Edwards Report suggested that Schreck, one of Gentles' employees, should be fired as a result of the investigation. Both Schreck's and Powell's immediate superiors took part in the January 7 meeting, along with other

relevant parties. (Defs.' Statement of Facts, at ¶ 63). Gentles was also involved with the investigation to the extent that it involved XO equipment that he had been charged with inventorying. (Defs.' Statement of Facts, at ¶ 22). For both of these reasons, Gentles had an interest in participating in the January 7 meeting. Contrary to plaintiff's assertions, it is immaterial that Gentles testified that he advocated to Christoph Winkelmann for a meeting of the relevant decision-makers.

As defendants correctly note, plaintiff has failed to grapple with XO's interest in the matter. Any statements Gentles made were made to XO's upper management, all of whom had an interest in the outcome of the investigation into the whereabouts of company equipment and in taking appropriate disciplinary actions. XO management therefore had a legitimate interest in statements Gentles may have made regarding what he knew about Powell's role in the disposal of the equipment. I conclude that the privilege existed here as a matter of law.

Of course, the privilege may be lost if abused. While abuse of the privilege is an issue of fact, "once a defendant has established a qualified privilege, the plaintiff must come foward with actual evidence" to create a genuine dispute for trial. *Vickers*, 719 N.E.2d at 1110. Plaintiff has failed to submit any such evidence. Plaintiff argues that Gentles abused his privilege in this case because he had no supervisory authority over Powell.

Plaintiff concedes that Gentles "may have had an interest to initially raise a question about the disposal of the cases" but contends that Gentles overstepped his authority in disagreeing with the Nash-Edwards Report's conclusions regarding Powell. (Pl.'s Resp., at 3). According to plaintiff, Gentles had no authority over Powell's employment. But the fact that Gentles was not Powell's supervisor or manager (in other words, the fact that Gentles could not independently discipline Powell) is not evidence that Gentles acted improperly by participating in discussions regarding Powell's involvement in the disposal of equipment for which Gentles was unquestionably responsible. Gentles did not exceed the scope of the privilege by speaking with XO management about Powell in relation to the Nash-Edwards Report.

Plaintiff also argues that Gentles abused the privilege by publishing the defamatory statements knowing they were false or displaying a reckless disregard to their falseness. First, I note that while plaintiff argues that Gentles knew or should have known certain facts, he has not connected those facts with any specific defamatory statement. The closest he gets to identifying specific defamatory statements is when he states that Gentles "intentionally made statements of fact that were false, concealed key facts that would have made a difference, or was reckless in disregarding the false nature of his statements accusing Powell of lying to investigators and fabricating documents during the investigation."

7

(Pl.'s Resp., at 5). But even here he falls short. Gentles' handwritten notes refer to "lying" or "manipulating" in response to a number of the findings in the Nash-Edwards Report. (*See* Defs.' Ex. 38). Some of these annotated findings relate to fabrication of the Pacheco receipt, but others relate to directing employees to cover up, to writing an email for an employee, and to other matters. (*Id.*). It is therefore not clear from plaintiff's filings precisely which defamatory statements would constitute an abuse of the privilege.

To the extent that plaintiff focuses on certain facts about the Pacheco receipt, I take him to argue that Gentles intentionally or recklessly published the defamatory statements imputing Powell's integrity or ability to perform his job as it relates to his involvement in creating the receipt. Primarily, plaintiff contends that Gentles knew Edwards directed Powell and others to create the receipt and withheld this information in order to make Winkelmann and Steve Nocella believe that Powell had created it alone and then tried to cover up with the investigators. According to plaintiff, Gentles' knowledge of the circumstances surrounding the Pacheco receipt comes from a string of emails sent to him from Jonathan Gippe on December 11, 2009. (Pl.'s Resp., at 4; Pl.'s Ex. 18). The email chain includes two emails from Edwards directing Powell and others to obtain an invoice or other proof of disposal from Rene Pacheco. Nowhere does Edwards direct Powell or anyone else to

create the receipt. In fact, Edwards' emails direct the group to obtain proof of disposal or, alternatively, the relevant information directly from Pacheco. (*Id.*). And when Don Robinson forwarded the Pacheco receipt to Edwards, Edwards expressed his disapproval of the document in a follow-up email sent on December 16, 2009. (Pl.'s Ex. 31). Not only does the evidence submitted by plaintiff not support the contention that Edwards directed the creation of the Pacheco receipt, it also does not support plaintiff's argument that Gentles knowingly or recklessly failed to account for such information in making his statements regarding Powell's involvement in creating the receipt.

Plaintiff also argues that Gentles knew or should have known that no new emergency power plant was delivered to Chicago in 2007 or was missing in 2009. Plaintiff contends that Gentles knew from Schreck as early as February 2009 that there were three cases in Chicago containing miscellaneous scrap, but he fails to explain how such knowledge would constitute evidence that Gentles abused the privilege in publishing any defamatory statement. Similarly, plaintiff's argument that Gentles made defamatory statements without conducting a reasonable investigation is unavailing. Again, plaintiff does not identify any particular defamatory statement made without a proper investigation. Further, it is undisputed that Gentles was charged with taking an inventory of XO's portable power plants (Defs.'s Statement of Facts, at ¶ 22),

9

that an investigation grew out of that inventory project (*id.* at ¶ 26), and that the allegedly defamatory comments Gentles is accused of making were made at the close of the investigation. There is simply no evidence that Gentles abused his privilege in this case. To the contrary, the statements about which plaintiff complains were made, if they were made at all, to interested and proper parties in the context of a workplace investigation and were made in reaction to the report documenting the findings of that investigation.

As plaintiff has not submitted any evidence that Gentles abused his privilege in making any defamatory statements to XO management, any such statements were privileged and plaintiff's claim for defamation must be dismissed. Further, for a claim for tortious interference to succeed, a plaintiff must prove that the defendant's acts were "independently tortious, for example as fraud or defamation," *Preston v. Wisconsin Health Fund*, 397 F.3d 539, 544 (7th Cir. 2005). Plaintiff does not come forward with evidence that Gentles committed another tort against him and, therefore, plaintiff's second claim is dependant on the first.

For these reasons, summary judgment is granted in defendants' favor.

**ENTER ORDER:**

_Elaine E. Bucklo_

**Elaine E. Bucklo**

United States District Judge

Dated: November 7, 2012